## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Melissa Dovala,                          Case No. 1:16cv2511

                  Petitioner,

      -vs-                       JUDGE PAMELA A. BARKER

Teri Baldauf, Warden,               ORDER

                  Respondent

This matter is before the Court on Respondent Teri Baldauf's Motion to Stay Judgment Granting Writ Conditioned upon New Trial. (Doc. No. 39.) Also pending is Petitioner Melissa Dovala's Motion to Set Appellate Bond, which was recently filed on December 3, 2020. (Doc. No. 41.) For the following reasons, Respondent's Motion to Stay Judgment Pending Appeal (Doc. No. 39) is GRANTED as set forth herein. The Court takes Petitioner's Motion for Bond (Doc. No. 41) under advisement and refers this matter to Pretrial Services for an investigation and recommendation in relation to the appropriate conditions, if any, for Petitioner's release.

## I.    Background

On October 19, 2020, this Court issued a Memorandum Opinion & Order and Judgment Entry in which it conditionally granted a Writ of Habeas Corpus to Petitioner Melissa Dovala pursuant to 28 U.S.C. § 2254 on the basis of ineffective assistance of trial counsel. (Doc. Nos. 33, 34.) Therein, the Court ordered that "[u]nless a new trial is scheduled within 120 days, Dovala must be unconditionally released." (*Id*.) By this Court's calculations, the 120-day deadline expires on February 16, 2021.

On November 17, 2020, Respondent filed a Notice of Appeal to the Sixth Circuit Court of Appeals.  (Doc. No. 38.)  The next day, Respondent filed a Motion to Stay this Court's Order conditionally granting the Writ and ordering a new trial.  (Doc. No. 39.)

On December 3, 2020, Dovala responded by filing a Motion to Set Appellate Bond.  (Doc. No. 41.)  Therein, Dovala indicates that she does not oppose Respondent's request that the Court stay the deadline for scheduling a new trial but asks the Court to "set a bond to allow her to be at liberty during the pendency of the Warden's appeal of this Court's granting of her petition for habeas corpus."  (*Id.* at pp. 1, 6.)  Respondent filed a Brief in Opposition to Dovala's Motion for Bond on December 17, 2020.  (Doc. No. 42.)   Dovala did not file a Reply Brief in support of her Motion.

## II.    Legal Standard

Although this matter is pending before the Sixth Circuit, this Court retains jurisdiction to enter a stay or set bail, pursuant to Fed. R. App. P. 23(c).  *Miller v. Stovall*, 641 F.Supp.2d 657, 661 (E.D. Mich. 2009).  The Supreme Court holds that the same standards governing stays of civil judgments apply to the release of habeas petitioners pending appeal.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The traditional factors to review when determining whether to stay an order pending appeal are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Id.  See also Workman v. Tate*, 958 F.2d 164, 166 (6th Cir.1992); *Miller*, 641 F.Supp.2d at 661.  In addition to these factors, the court should consider factors more directly germane to bail consideration, i.e., the possibility of flight, possible danger to the public, and the state's interest in

continuing custody and rehabilitation pending the case's final determination. *Id.* at 777. *See also Workman,* 958 F.2d at 166; *Newman v. Metrish,* 300 Fed. Appx. 342, 344 (6th Cir. 2008).

"Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton,* 481 U.S. at 777. The Supreme Court offered the following guidance to lower courts in evaluating the *Hilton* factors:

> The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. *Cf. McSurely v. McClellan,* 225 U.S. App. D.C. 67, 75, 697 F.2d 309, 317 (1982); *O'Bryan v. Estelle,* 691 F.2d 706, 708 (CA5 1982), cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Ruiz v. Estelle,* 650 F.2d 555, 565–566 (CA5 1981). Where the State's showing on the merits falls below this level, the preference for release should control.

*Hilton,* 481 U.S. at 777–78 (citations omitted). Finally, the Supreme Court also explained that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* at 777.

## III.  Analysis

Respondent states that the purpose of her Motion to Stay is to allow the State to seek appellate review of this Court's decision granting habeas relief in the Sixth Circuit and, if necessary, the United States Supreme Court.  (Doc. No. 39.)  Respondent argues that the *Hilton* factors weigh in her favor, arguing in particular that there is a strong likelihood that the State will succeed on the merits on appeal.  (*Id.* at pp. 3-7.)  Respondent further asserts that the State will be irreparably injured if a stay is not granted "because it is unlikely that the Respondent's appeal would be briefed and decided

before this Court's 120-day deadline" for scheduling the matter for a new trial. (*Id*. at p. 7.) Finally, Respondent argues the public interest lies in favor of a stay because Dovala was convicted of a violent felony and the State therefore has a strong interest in continuing her custody and rehabilitation. (*Id*. at p. 8.)

Dovala filed a Motion to Set Appellate Bond in response to Respondent's Motion. (Doc. No. 41.) Therein, Dovala states that "Respondent's Motion to Stay is not challenged here as courts have not normally questioned that a Respondent has a substantial interest in avoiding a re-trial of Petitioner prior to a ruling on her appeal." (*Id*. at p. 6.) Dovala explains that "the idea is not to prevent the Warden from pursuing an appeal but, under these circumstances, to avoid Melissa's serving additional and a possibly undeserved extended term of incarceration" pending the outcome of appeal. (*Id*.)

Thus, Dovala does not present any argument regarding the *Hilton* factors with respect to Respondent's request for a stay of the 120-day deadline for scheduling a new trial. She does, however, argue that the *Hilton* factors weigh in her favor with respect to her request that she be released on bond pending the outcome of Respondent's appeal. (*Id*.) In this regard, Dovala argues that Respondent has not made a strong showing of likelihood of success on appeal, asserting that the state court ruling at issue herein was "clearly inconsistent with firmly established United States Supreme Court precedent." (*Id*. at p. 7.) Dovala further maintains that the remaining *Hilton* factors also weigh in her favor in light of the fact that she has no previous criminal record; is a model prisoner with no disciplinary infractions; has already served her minimum sentence of 15 years; and has developed a strong support system which will provide her emotional and financial support if released. (*Id*. at pp. 7-8.) Lastly, Dovala suggests that she will be substantially injured if this Court does not

4

release her on bond because the Ohio Department of Rehabilitation and Correction ("ODRC") has already once rescheduled her November 2020 parole hearing due to "the present uncertainty of her legal status."  (*Id*. at p. 5.)

Respondent opposes Dovala's request for release on bond.  (Doc. No. 42.)  Respondent reiterates her argument that the State has a strong likelihood of success on the merits and that the State's ability to appeal will be irreparably injured if a stay is not granted.  (*Id.* at pp. 2-7.)  With respect to the remaining *Hilton* factors, Respondent argues that these factors weigh against release. Specifically, Respondent asserts that Dovala will not be substantially injured if denied release because she "is scheduled to go before the parole board for a release consideration hearing in March of 2021." (*Id.* at p. 8.)  Respondent also emphasizes the State's interest in continued custody and rehabilitation, noting that the Cuyahoga County Prosecutor's Office has submitted a statement to the Ohio Adult Parole Authority opposing Dovala's parole.  (*Id.* at p. 9.)  Finally, Respondent argues that, pursuant to 18 U.S.C. § 3771(a) & (b)(2), the victim's representatives (i.e., Riley Smath's parents) have a right to be heard on the issue of Dovala's potential release before any decision is made.  (*Id.* at pp. 9-10.)

The Court will first address the parties' arguments regarding Respondent's likelihood of success on the merits and will then turn its attention to the remaining *Hilton* factors, below.

### A.    Likelihood of Success on the Merits

As noted above, the first factor a court must consider in determining whether to stay an order granting a habeas petition is whether the respondent has made a strong showing that it is likely to succeed on the merits, or at the very least has demonstrated "a substantial case on the merits." *Hilton*, 481 U.S. at 778.

5

Here, Respondent argues that "an affirmance in the Sixth Circuit of the district court's decision is by no means a certainty." (Doc. No. 42 at p. 2.) Specifically, Respondent maintains that the State has a strong likelihood of success on the merits because this Court erred when it failed to apply AEDPA deference in evaluating the prejudice prong of the test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Respondent further asserts that "this Court also did not explain why it considered the issue of prejudice *de novo* and did not accord double deference to the appellate court's March 31, 2016 decision." (*Id*. at p. 4.)

Respondent is incorrect. In its October 19, 2020 Memorandum Opinion & Order, this Court applied AEDPA deference to the state court's analysis of the deficient performance prong of the *Strickland* test but then explained that, under prevailing Sixth Circuit precedent, review of the performance prong was *de novo*. Specifically, the Court stated as follows:

> Here, having concluded that [trial counsel] Burge's performance was not deficient, the state appellate court did not reach the issue of prejudice. [fn omitted] The Sixth Circuit has explained that '[w]hen a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court' *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012); *see also Moss v. Olson*, 699 Fed. Appx 477, 481–82 (6th Cir. 2017) (explaining why this split standard still applies by reconciling *Harrington*, 562 U.S. at 99, *with Rompilla v. Beard*, 545 U.S. 374 (2005)). *See also Smith v. Cook*, 956 F.3d 377, 392 (6th Cir. 2020); *Phillips v. Hoffner*, 755 Fed. Appx. 481, 491 (6th Cir. 2018). Accordingly, this Court considers the issue of prejudice *de novo*.

(Doc. No. 33 at pp. 44-45.) Notably, although Respondent argues that reviewing the prejudice prong *de novo* under these circumstances contravenes the Supreme Court's decision in *Harrington v. Richter* (Doc. No. 42 at p. 4), the Sixth Circuit expressly considered and rejected this very argument in *Rayner v. Mills,* 685 F.3d 631, 638 (6th Cir. 2012). Specifically, in *Rayner,* the Sixth Circuit explained as follows:

*Harrington* does not specifically address the scenario where, as here, a state court's decision discusses one prong but not the other. We, and other circuits, have addressed that scenario in post-*Harrington* decisions. In at least two published opinions—one of which was decided *en banc*—where the state court adjudicated only one prong, we have continued to rely on *Wiggins* and have reviewed the remaining prong de novo. *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir.2011) (en banc); *Rice v. White*, 660 F.3d 242, 251 (6th Cir.2011); *see also Brown v. McKee*, 460 Fed. Appx. 567, 580 (6th Cir.2012); *Davis*, 658 F.3d at 541 (Martin, J., concurring in part and dissenting in part). These decisions did not examine the interplay between *Wiggins* and *Harrington* nor specifically address the argument that tension may exist between the cases. However, an Eleventh Circuit opinion and a one-judge opinion in the Seventh Circuit have undertaken this analysis and both concluded that *Harrington* did not disturb *Wiggins*. *Ferrell v. Hall,* 640 F.3d 1199, 1224–27 (11th Cir.2011); *Sussman v. Jenkins*, 642 F.3d 532, 534 (7th Cir.2011) (Ripple, J.).  Fifth and Ninth Circuit cases have, like our own, continued to follow *Wiggins* or *Rompilla* without discussion. *Salts v. Epps*, 676 F.3d 468, 480 n. 46 (5th Cir.2012); *Detrich v. Ryan*, 677 F.3d 958, 983 (9th Cir.2012); *Williams v. Cavazos*, 646 F.3d 626, 637 n. 6 (9th Cir.2011), cert. granted on other grounds, —— U.S. ——, 132 S.Ct. 1088, 181 L.Ed.2d 806 (2012).

We see no reason to stray from the standard of review observed by our *en banc* Sixth Circuit in *Davis v. Lafler* and the other four circuits to encounter this issue: **When a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland prong* not relied upon by the state court. The unadjudicated prong is reviewed *de novo*. A fuller examination supports this standard.**

Let us begin with the *Harrington* situation, a state court decision without explanation. A summary holding rejecting an ineffective assistance claim necessarily reveals that the state court relied on at least one *Strickland* prong but gives no indication as to whether the holding was based on deficiency or prejudice or both. In such situations, it makes sense under *Harrington* for a habeas court to review both prongs pursuant to AEDPA to assure proper deference to the unspoken holding(s) actually relied upon by the state court. *See also Harrington*, 131 S.Ct. at 785 (dismissing the "pure speculation" that the state court members "may not have agreed on the reasons for denying his petition"). This contrasts with the situation in *Wiggins* in which the state court rendered a conclusion only on the deficiency prong. Because a petitioner must satisfy both *Strickland* prongs in order to prevail, a court's dismissal of an ineffective assistance claim based solely on one prong says nothing about what the court thought about the other prong. It would be inappropriate to presume the state court not only had a finding in mind as to the unexplained prong but that this finding was against the petitioner. *See Childers*, 642 F.3d at 986 ("Conversely [to *Harrington*], *Wiggins* and *Rompilla* were cases where the Court was not left to speculate as to what the state court had, and had not, adjudicated."). Thus, in the situation where the state court

adjudication relies upon only one prong, deference has no proper role in reviewing the remaining prong.

Review of *Harrington* supports our conclusion. In that decision, the Supreme Court expressly limited application of its holding to cases in which the state court's decision "is unaccompanied by an explanation." *Sussman*, 642 F.3d at 534 (quoting *Harrington*, 131 S.Ct. at 784). Moreover, "the Supreme Court in *Harrington* did not disturb its approach in *Wiggins*" and "[w]e certainly cannot assume that the Court overruled *sub silentio* its holding in *Wiggins*—a precedent so important to the daily work of the lower federal courts," *id.*, which the Supreme Court cited in *Harrington* "without the slightest hint of disapproval," *Childers*, 642 F.3d at 986–87, and has continued to rely upon in other decisions, *e.g.*, *Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1410, 179 L.Ed.2d 557 (2011) (citing *Rompilla*, 545 U.S. at 390, 125 S.Ct. 2456).

Thus, we do not find *Harrington* and the Supreme Court's earlier decisions to be in conflict.  The principle that "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated," *Harrington*, 131 S.Ct. at 784, does not necessarily mean that each "component" must itself be reviewed under the § 2254(d) standard in every situation. After all, both *Wiggins* and *Rompilla* recognized that the AEDPA standard applies to the "claim" of ineffective assistance of counsel before evaluating an unreviewed prong *de novo*. 539 U.S. at 519–20, 123 S.Ct. 2527, 545 U.S. at 380, 125 S.Ct. 2456; see also *Porter*, 130 S.Ct. at 452. The *Wiggins* and *Rompilla* line of cases work together with *Harrington* to ensure application of AEDPA to an entire ineffective assistance claim. In doing so, they mandate AEDPA deference to both prongs when the state court decision summarily dismisses the claim without explanation; **when a state court decision relies only on one prong, the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong.** This is a "straightforward approach" that allows those Supreme Court decisions to "co-exist comfortably." *Childers,* 642 F.3d at 986. We hold this to be the proper framework and affirm the district court's denial of Rayner's habeas petition for the reasons provided below.

*Rayner*, 685 F.3d at 637-639 (emphasis added) (footnotes omitted).   As recently as April 2020, the Sixth Circuit reaffirmed in a published decision that, where a state appellate court addresses only one of the *Strickland* prongs, "this court's caselaw requires" that a court review the remaining prong *de novo*.  *Smith v. Cook*, 956 F.3d 377, 392 (6th Cir. 2020).  Indeed, in *Smith,* the Sixth Circuit observed that "*Rayner* purported to distinguish *Richter, see* 685 F.3d at 638, and its 'peculiar rule' remains the law of our circuit." *Id*.at fn 2 (citing *Hodges v. Colson*, 727 F.3d 517, 537 & n.5 (6th Cir. 2013)).

8

While Respondent may disagree with the Sixth Circuit's "peculiar rule" in *Rayner,* it is binding precedent in this Circuit and this Court is bound to follow it.  The Court further notes that, contrary to Respondent's assertion that this Court "failed to explain" why it considered the issue of prejudice *de novo*, this Court expressly discussed this issue and cited both *Rayner* and *Smith* in its October 19, 2020 Memorandum Opinion & Order.  (Doc. No. 33 at pp. 44-45.)  Lastly, the Court notes that, after addressing the issue of prejudice *de novo*, the Court further found as follows:  "Even if the Court were to apply AEDPA deference to the state trial court's finding of prejudice, however, the Court would nonetheless find (for all of the reasons set forth above) that the state court's decision was an unreasonable application of *Strickland*."  (*Id.* at fn 17.)  Thus, for all the reasons set forth above, the Court is not persuaded that Respondent has a strong likelihood of success on the merits with respect to this particular issue.

Respondent next argues that the State has a strong likelihood of success on the merits because this Court erroneously relied on Sixth Circuit precedent (rather than United States Supreme Court precedent) in finding that the state appellate court unreasonably concluded that trial counsel was not ineffective under *Strickland*.  For the following reasons, the Court disagrees.

In support of its grant of habeas relief, this Court expressly stated that "the well-established federal law used for assessing ineffective assistance of counsel claims is the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)."  (Doc. No. 33 at p. 22.)  The Court further acknowledged the very high level of deference that is accorded to state court decisions regarding *Strickland* under § 2254(d).  In particular, the Court noted that a federal habeas court's review is "'doubly deferential' because AEDPA provides deference to the state court, which in turn is expected to give considerable deference to trial counsel's decisions."  (*Id*. at p. 23.)  After carefully reviewing

9

the state appellate court's decision, the Court concluded that "the state appellate court's determination that Burge's performance was not deficient is an unreasonable application of *Strickland*." (*Id.* at p. 44.) Thus, this Court appropriately acknowledged and applied United States Supreme Court precedent in determining that Dovala was entitled to habeas relief.

It is true that, as part of its analysis, this Court considered and cited the Sixth Circuit's published decision in *Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007), as well as other several other decisions in which the Sixth Circuit granted habeas relief on the basis that trial counsel failed to conduct a reasonable investigation regarding potential expert testimony. (Doc. No. 33 at pp. 33-34) (citing *Couch v. Booker*, 632 F.3d 241 (6th Cir. 2011) and *Dendel v. Washington*, 647 Fed. Appx. 612 (6th Cir. 2016)). However, the Court did not find that the state court decision in Dovala's underlying criminal case was an unreasonable application of *Richey, Couch*, and/or *Dendel*. Rather, this Court expressly found that the state court's decision was an unreasonable application of the Supreme Court's decision in *Strickland, supra*. The Court merely pointed to *Richey, Couch* and *Dendel* as examples of cases where, under very similar circumstances, the Sixth Circuit applied AEDPA deference and found that the state courts had unreasonably applied *Strickland, supra*.

In any event, the Court did not exceed AEDPA's strict limitation on the source of clearly established federal law by looking to *Richey, Couch, and Dendel* in the course of its analysis. As noted above, in each of those decisions, the Sixth Circuit expressly found that the state courts had considered the petitioners' ineffective assistance claims on the merits, applied AEDPA deference, and concluded that the state courts' determinations were unreasonable applications of *Strickland*. Thus, this Sixth Circuit precedent "already accounts for AEDPA's severe limitation on the source of clearly established federal law, and … a federal court does not bypass AEDPA's limit on the source

10

of that law by considering" Circuit cases that grant or affirm relief under AEDPA.  *Pouncy v. Palmer*, 168 F.Supp.3d 954, 964 (E.D. Mich. 2016).

In light of the above, the Court is not persuaded that Respondent has a strong likelihood of success on the merits on appeal.  Nonetheless, the Court recognizes the very steep climb that habeas petitioners face in obtaining relief under the AEDPA.  The Court also acknowledges that the Sixth Circuit may disagree with this Court's analysis of Dovala's ineffective assistance claims. Accordingly, while Respondent may not have shown a strong likelihood of success on the merits, the Court finds that Respondent has at least demonstrated that it has a substantial case on the merits.

**B.     Remaining *Hilton* factors**

The remaining *Hilton* factors are whether the applicant will be irreparably injured absent a stay, whether issuance of the stay will substantially injure other parties interested in the proceeding, and the public interest.  *Hilton*, 481 U.S. at 777.

Here, the parties' arguments regarding stay vs. release on bond are somewhat muddled.  With regard to the issue of whether this Court should stay its Judgment (and the deadline set forth therein for scheduling a new trial), Dovala does not argue that the *Hilton* factors weigh against a stay.  Indeed, Dovala acknowledges that Respondent has "a substantial interest in avoiding a re-trial of Petitioner prior to a ruling on her appeal."  (Doc. No. 41 at p. 6.)  Moreover, and notably, Dovala does not argue either that she would be injured by a stay of this Court's Judgment pending appeal, or that a stay is contrary to the public interest.  *See* Doc. No. 41.  As noted above, Respondent argues that each of the *Hilto*n factors weigh heavily in favor of staying the Court's Judgment (in particular its 120-day new trial deadline) pending appeal.  (Doc. No. 39.)

The parties do disagree, however, regarding the application of the remaining *Hilton* factors in the context of Dovala's request to be released on bond.  As noted *supra*, Dovala argues that these factors weigh heavily in favor of release because she (1) has no previous criminal record; (2) has been a model prisoner with no disciplinary infractions; (3) has already served her minimum sentence of 15 years; and (4) has developed a strong support system which will provide her with emotional and financial support if released.  (Doc. No. 41 at pp. 7-8.)  She also argues that she is not a flight risk, noting that she "remained on bond during the entire thirteen months of pretrial proceedings and was never alleged to have committed any violations of her release, or failed to appear in court for any required appearance, including her jury trial."  (*Id*. at pp. 4-5.)  Dovala further asserts that, if released, she will live with (and care for) her 80 year old father and, further, that she "has life-long friends who will be there to provide her with love and support if she is released."  (*Id*. at p. 3, 4.)  Lastly, Dovala suggests that she will be substantially injured if this Court does not release her on bond because the ODRC has already once rescheduled her November 2020 parole hearing due to "the present uncertainty of her legal status."  (*Id*. at p. 5.)

Respondent argues that the remaining *Hilton* factors weigh against release because (1) Dovala was convicted of a violent felony; (2) the state courts have repeatedly upheld her conviction and sentence; (3) the remaining portion of her sentence (15 years to life) is substantial; and (4) she "is scheduled" to go before the parole board for a hearing in March 2021.  (Doc. No. 42.)  Respondent further asserts that, under 18 U.S.C. § 3771(a) & (b)(2), this Court may not release Dovala without first providing Riley Smath's parents with an opportunity to be heard. (*Id*.)

Dovala did not file a Reply Brief in support of her Motion for Bond, thus the Court does not have the benefit of any further information or briefing from Dovala with respect to the issues raised in Respondent's Brief in Opposition.

While federal courts typically consider the issues of stay and release jointly, the Court feels constrained, under the particular circumstances presented herein, to address these issues separately. Specifically, the 120-day deadline set forth in this Court's October 19, 2020 decision for scheduling a new trial is fast approaching, and Dovala does not challenge Respondent's Motion to Stay to the extent it seeks a stay of this deadline pending appeal.  (Doc. No. 41 at p. 6.)  Moreover, while the Court is preliminarily inclined to find that the *Hilton* factors weigh in favor of granting Dovala release on bond, the Court concludes that it does not have sufficient information and evidence before it regarding the second, third, and fourth *Hilton* factors to make this determination, particularly in light of Dovala's failure to file a Reply Brief in support of her Motion.

Thus, in light of the time constraints presented, the Court proceeds as follows.  For the following reasons, Respondent's Motion to Stay Judgment (Doc. No. 39) is granted and the 120-deadline set forth in this Court's October 19, 2020 decision for scheduling a new trial is hereby stayed. The Court agrees with Respondent that, if the State is required to schedule a new trial for Dovala within 120 days of this Court's October 19, 2020 decision, Respondent's appeal might be rendered moot.  Moreover, while the Court does not agree that Respondent has a strong likelihood of success on the merits, the Court acknowledges that the Sixth Circuit may disagree with the Court's analysis of Dovala's ineffective assistance of counsel claim. Thus, it could be a waste of judicial resources for the State to schedule (and potentially proceed with) Dovala's new trial while the appeal of this Court's order is pending before the Sixth Circuit.  Lastly, Dovala does not oppose Respondent's Motion or

otherwise argue that she will be substantially injured by a stay pending appeal. Accordingly, Respondent's Motion to Stay Judgment (Doc. No. 39) is granted as set forth above.

The Court requires additional information and evidence to resolve Dovala's Motion for Bond (Doc. No. 41) and, therefore, takes this Motion under advisement.  This matter is referred to Pretrial Services for an investigation and recommendation in relation to the appropriate conditions, if any, for Dovala's release.  *See, e.g., Marion v. Woods*, 2015 WL 5895916 (E.D. Mich. Oct. 9, 2015) (citing *Newman,* 300 Fed. Appx. at 343-344.)  Once the Court receives a report from Pretrial Services, the Court will set a hearing at which the parties will be expected to introduce evidence and argument in support of their positions with respect to Dovala's potential release on bond.  In particular, the parties shall be prepared to present information and evidence regarding (1) the specific reasons why Dovala's November 2020 parole hearing was rescheduled to March 2021; and (2) whether or not the instant habeas proceedings may result in any further postponements of her parole hearing.  In addition, at the upcoming hearing, the victim's representatives will be afforded an opportunity to speak regarding the issue of Dovala's potential release, if they so choose, in accordance with 18 U.S.C. § 3771(a) & (b)(2).

## IV.    Conclusion

Accordingly, Respondent's Motion to Stay Judgment Pending Appeal (Doc. No. 39) is GRANTED as set forth herein.   The Court takes Petitioner's Motion for Bond (Doc. No. 41) under advisement and refers this matter to Pretrial Services for an investigation and recommendation in

relation to the appropriate conditions, if any, for Petitioner's release.  An evidentiary hearing will be scheduled once the Court receives a report from Pretrial Services.

**IT IS SO ORDERED.**


  *s/Pamela A. Barker*
  PAMELA A. BARKER
Date:  December 30, 2020          U. S. DISTRICT JUDGE

15