IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Melissa Dovala,** | Case No. 1:16cv2511 |
| Petitioner, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Teri Baldauf, Warden,** | MEMORANDUM OPINION AND ORDER |
| Respondent | |

This matter is before the Court on Petitioner Melissa Dovala's Motion to Set Appellate Bond. (Doc. No. 41.) Respondent Teri Baldauf filed a Brief in Opposition on December 17, 2020. (Doc. No. 42.) A Pretrial Services Report & Recommendation was submitted on April 6, 2021, and a hearing was thereafter conducted on April 23, 2021. (Doc. Nos. 47, 48, 52.) The parties filed supplementary materials on April 22 and 24, 2021. (Doc. Nos. 51, 53.)

For the following reasons, Petitioner's Motion for Bond is GRANTED subject to the conditions set forth both herein and in the Order Setting Conditions of Release and Appearance Bond issued separately. In addition, for the reasons set forth below, the Court's previous Order (Doc. No. 44) granting Respondent's Motion to Stay Judgment Pending Appeal is VACATED IN PART, as set forth below.

**I.      Background**

On October 19, 2020, this Court issued a Memorandum Opinion & Order and Judgment Entry in which it conditionally granted a Writ of Habeas Corpus to Petitioner Melissa Dovala pursuant to 28 U.S.C. § 2254 on the basis of ineffective assistance of trial counsel. (Doc. Nos. 33, 34.) Therein,

the Court ordered that "[u]nless a new trial is scheduled within 120 days, Dovala must be unconditionally released." (*Id*.)

On November 17, 2020, Respondent filed a Notice of Appeal to the Sixth Circuit Court of Appeals. (Doc. No. 38.) The next day, Respondent filed a Motion to Stay this Court's Order conditionally granting the Writ and ordering a new trial. (Doc. No. 39.)

On December 3, 2020, Dovala responded by filing a Motion to Set Appellate Bond. (Doc. No. 41.) Therein, Dovala indicated that she did not oppose Respondent's request that the Court stay the deadline for scheduling a new trial but asked the Court to "set a bond to allow her to be at liberty during the pendency of the Warden's appeal of this Court's granting of her petition for habeas corpus." (*Id*. at pp. 1, 6.) Respondent filed a Brief in Opposition to Dovala's Motion for Bond on December 17, 2020. (Doc. No. 42.) Dovala did not file a Reply Brief in support of her Motion.

On December 30, 2020, this Court issued an Order in which it granted Respondent's Motion to Stay Judgment Pending Appeal. (Doc. No. 44.) Therein, the Court recited the relevant factors to be considered under *Hilton v. Braunskill*, 481 U.S. 770 (1987), i.e., (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 776. Considering the first factor, the Court concluded that "while Respondent may not have shown a strong likelihood of success on the merits, . . . Respondent has at least demonstrated that it has a substantial case on the merits." (*Id.* at p. 11.) With regard to the remaining *Hilton* factors, the Court found that "it does not have sufficient information and evidence before it" to make a determination, "particularly in light of Dovala's failure to file a Reply Brief in support of her Motion." (*Id*.)

2

The Court expressed concern, however, about the fact that that the 120-day deadline for scheduling a new trial was "fast approaching," particularly given that the Respondent's appeal to the Sixth Circuit was not yet fully briefed at that time. (*Id.* at p. 13.) The Court explained as follows:

> While federal courts typically consider the issues of stay and release jointly, the Court feels constrained, under the particular circumstances presented herein, to address these issues separately. Specifically, the 120-day deadline set forth in this Court's October 19, 2020 decision for scheduling a new trial is fast approaching, and Dovala does not challenge Respondent's Motion to Stay to the extent it seeks a stay of this deadline pending appeal. (Doc. No. 41 at p. 6.) Moreover, while the Court is preliminarily inclined to find that the *Hilton* factors weigh in favor of granting Dovala release on bond, the Court concludes that it does not have sufficient information and evidence before it regarding the second, third, and fourth *Hilton* factors to make this determination, particularly in light of Dovala's failure to file a Reply Brief in support of her Motion.
>
> Thus, in light of the time constraints presented, the Court proceeds as follows. For the following reasons, Respondent's Motion to Stay Judgment (Doc. No. 39) is granted and the 120-deadline set forth in this Court's October 19, 2020 decision for scheduling a new trial is hereby stayed. The Court agrees with Respondent that, if the State is required to schedule a new trial for Dovala within 120 days of this Court's October 19, 2020 decision, Respondent's appeal might be rendered moot. Moreover, while the Court does not agree that Respondent has a strong likelihood of success on the merits, the Court acknowledges that the Sixth Circuit may disagree with the Court's analysis of Dovala's ineffective assistance of counsel claim. Thus, it could be a waste of judicial resources for the State to schedule (and potentially proceed with) Dovala's new trial while the appeal of this Court's order is pending before the Sixth Circuit. Lastly, Dovala does not oppose Respondent's Motion or otherwise argue that she will be substantially injured by a stay pending appeal. Accordingly, Respondent's Motion to Stay Judgment (Doc. No. 39) is granted as set forth above.
>
> The Court requires additional information and evidence to resolve Dovala's Motion for Bond (Doc. No. 41) and, therefore, takes this Motion under advisement. This matter is referred to Pretrial Services for an investigation and recommendation in relation to the appropriate conditions, if any, for Dovala's release. *See, e.g., Marion v. Woods,* 2015 WL 5895916 (E.D. Mich. Oct. 9, 2015) (citing *Newman,* 300 Fed. Appx. at 343-344.) Once the Court receives a report from Pretrial Services, the Court will set a hearing at which the parties will be expected to introduce evidence and argument in support of their positions with respect to Dovala's potential release on bond. *** In addition, at the upcoming hearing, the victim's representatives will be afforded an opportunity to speak regarding the issue of Dovala's potential release, if they so choose, in accordance with 18 U.S.C. § 3771(a) & (b)(2).

(*Id*. at pp. 13-14.)

On April 6, 2020, the Court received the Pretrial Services Report, which recommended that Dovala be released on a $100,000 unsecured bond subject to certain conditions. (Doc. No. 47.) In addition, the Court received a copy of the Ohio Department of Rehabilitation & Correction's "Current Institutional Report Summary" regarding Dovala, which contained information relating to (among other things) her security classification, current risk score, and disciplinary history while incarcerated. (Doc. No. 48.)

An in-person hearing was thereafter conducted on April 23, 2021. (Doc. No. 52.) Dovala was represented by counsel and provided the opportunity to attend in-person. Due to Covid-related concerns, Dovala chose to participate via Zoom. Dovala's father, Randy Heimann, appeared in person and answered several questions posed by the Court regarding Dovala's intent to reside with him at his home if released on bond. Victim representatives Eileen Callahan-Smath, Gerald Smath, and Jaedon Smath appeared in person and made statements pursuant to 18 U.S.C. § 3771(a) & (b)(2). Lastly, the Court heard argument by counsel for Dovala and Respondent. Both parties submitted supplementary materials, on April 22 and 24, 2021.[1] (Doc. Nos. 51, 53.)

The docket for Respondent's appeal to the Sixth Circuit reflects that the appeal is now fully briefed and set for oral argument on June 10, 2021. *See Dovala v. Baldauf*, Case No. 20-4222 (6th Cir.) (docket sheet).

## II. Legal Standard

---

[1] The final transcript of the April 23, 2021 hearing was not available as of the date of the instant Memorandum Opinion & Order. The Court did, however, have an advance copy of the hearing transcript which it relied on in preparing the instant Opinion.

Although this matter is pending before the Sixth Circuit, this Court retains jurisdiction to enter a stay or set bail, pursuant to Fed. R. App. P. 23(c). *Miller v. Stovall*, 641 F.Supp.2d 657, 661 (E.D. Mich. 2009). The Supreme Court holds that the same standards governing stays of civil judgments apply to the release of habeas petitioners pending appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

As noted above, the traditional factors to review when determining whether to stay an order pending appeal are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id. See also Nken v. Holder,* 556 U.S. 418, 434 (2009); *Workman v. Tate*, 958 F.2d 164, 166 (6th Cir.1992); *Miller*, 641 F.Supp.2d at 661. In addition to these factors, the court should consider factors more directly germane to bail consideration, i.e., the possibility of flight, possible danger to the public, and the state's interest in continuing custody and rehabilitation pending the case's final determination. *Id*. at 777. *See also Workman,* 958 F.2d at 166; *Newman v. Metrish*, 300 Fed. Appx. 342, 344 (6th Cir. 2008).

"Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton,* 481 U.S. at 777. The Supreme Court offered the following guidance to lower courts in evaluating the *Hilton* factors:

> The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. *Cf. McSurely v. McClellan*, 225 U.S. App. D.C. 67, 75, 697 F.2d 309, 317 (1982); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (CA5 1982), cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984);

5

> *Ruiz v. Estelle*, 650 F.2d 555, 565–566 (CA5 1981). Where the State's showing on the merits falls below this level, the preference for release should control.

*Hilton*, 481 U.S. at 777–78 (citations omitted). *See also United States v. Bass*, ---- Fed. Appx. ----, 2021 WL 476467 at * 1 (6th Cir. Feb. 5, 2021). Finally, the Supreme Court also explained that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* at 777.

**III.   Analysis**

    **A.**     **Effect of Court's December 30, 2020 Order on Dovala's Motion for Bond**

As an initial matter, the Court addresses an argument first raised by Respondent during the April 23, 2021 hearing. At that time, counsel for Respondent noted that this Court had already considered the first *Hilton* factor in its December 30, 2020 Order and determined that Respondent had demonstrated a substantial case on the merits. Respondent argued that, having granted the stay of the new trial deadline in that Order, a decision granting Dovala's Motion for Bond could present "conflicting determinations under the same factors," thereby implicating the stay. (April 23, 2021 Hrg. Tr. at pp. 9-10.) Respondent suggested that the Sixth Circuit "might look unfavorably" upon such a result and noted that oral argument is set before that court on June 10, 2021. (*Id.*) Counsel for Dovala did not acknowledge or address this issue during the hearing.

As noted above, the Supreme Court has held that the same standards governing stays of civil judgments apply to the release of habeas petitioners pending appeal. *Hilton*, 481 U.S. at 776. Thus, courts in this Circuit have found that the same analysis applies to both a warden's motion to stay pending appeal and a habeas petitioner's motion for release on bond. *See Miller*, 641 F.Supp.2d at

661 ("Miller's motion to set bail and the Warden's motion for stay both concern her potential release; therefore, the same analysis applies to both.") *See also Ambrose v. Booker*, 2014 WL 3519221 at * 2 (E.D. Mich. July 16, 2014) (finding that "the analysis of whether this Court's 180-day [new trial] directive should be stayed pending appeal merges with the analysis of whether Ambrose should be released on bond pending that appeal.") The Court, then, agrees with Respondent that district courts should generally strive to avoid "conflicting determinations" of the *Hilton* factors in evaluating competing motions for stay and for release on bond.

As has been demonstrated in the instant case, however, practical considerations can sometimes pose challenges for district courts evaluating the *Hilton* factors in these two contexts. Here, for example, the Court recognized Respondent's concerns regarding the new trial deadline but lacked critical information relevant to Dovala's request for release on bond. Specifically, the Court acknowledged that "it could be a waste of judicial resources for the State to schedule (and potentially proceed with) Dovala's new trial while the appeal of this Court's order is pending before the Sixth Circuit." (Doc. No. 44 at p. 13.) At the same time, however, the Court noted that it required further information to properly evaluate Dovala's motion for bond, such as her criminal record, disciplinary history while incarcerated, and the statements of the victim's representatives. (*Id*.) In order to balance these competing considerations, the Court evaluated the *Hilton* factors in its December 30, 2020 Order based on the information it had before it at that time.

However, the Court now has a great deal more information in the record before it. The April 6, 2021 Pretrial Services Report provides critical information regarding Dovala's criminal history, family and community ties, physical and mental health, and the status of her parole hearings. (Doc. No. 47.) The Court was also provided with Dovala's Ohio Department of Rehabilitation & Correction

("ODRC") Institutional Report Summary, which details her disciplinary history and program participation while incarcerated. (Doc. No. 48.) Moreover, the Court obtained important information during the April 23, 2021 hearing. Specifically, the Court was able to question Dovala's father regarding certain safety and practical considerations relevant to Dovala's request to be allowed to reside at his home if released. In addition, the Court paid careful attention to the statements of the victim's representatives, Ms. Callahan-Smath, Gerald Smath, and Jaedon Smath, the mother, father, and brother (respectively) of Riley Smath.

In light of this new information, and in order to avoid "conflicting determinations," the Court is now prepared to fully consider the *Hilton* factors, based on a full and complete record, in the context of both Respondent's Motion to Stay and Dovala's Motion for Release on Bond. As set forth in detail *infra*, the Court finds that the second, third, and fourth *Hilton* factors weigh strongly in favor of release on bond and, therefore, Dovala's Motion for the same is granted, subject to the strict conditions set forth both herein and in the Order Setting Conditions of Release and Appearance Bond issued separately. The Court also finds that, based on the information now before it, these same factors weigh against granting a stay pending appeal. Accordingly, the Court hereby vacates its December 30, 2020 Order (Doc. No. 44) to the extent it grants Respondent's Motion to Stay Judgment Pending Appeal (Doc. No. 39).[2]

The Court is aware that neither party expressly asked this Court to reconsider its previous ruling granting a stay and, further, that this result is likely not what the Respondent anticipated when counsel raised this issue during the April 23, 2021 hearing. Thus, and to ameliorate any potential

---

[2] The Court vacates the December 30, 2020 Order (Doc. No. 44) only to the extent that Order granted the Respondent's request for a stay. The Court's discussion of the first *Hilton* factor in the December 30, 2020 Order is not vacated and is, in fact, adopted and incorporated herein, as set forth *infra*.

8

prejudice to the Respondent, the Court will deem the 120-day new trial deadline tolled in light of the filing of the Respondent's Motion to Stay. The 120-day deadline set forth in this Court's October 19, 2020 Memorandum Opinion & Order will, therefore, begin to run as of the date of this Order.

The Court will now set forth its analysis of the *Hilton* factors, below.

### B. *Hilton* Factors

#### 1. Likelihood of Success on the Merits

As noted above, the first factor a court must consider in determining whether to stay an order granting a habeas petition is whether the respondent has made a strong showing that it is likely to succeed on the merits, or at the very least has demonstrated "a substantial case on the merits." *Hilton*, 481 U.S. at 778. As Respondent correctly notes, this Court already considered this factor, at length, in its December 30, 2020 Order and found that "while it may not have shown a strong likelihood of success on the merits, Respondent has at least demonstrated that it has a substantial case on the merits." (Doc. No. 44 at pp. 5-11.) The Court incorporates herein that section of its December 30, 2020 Order that evaluates the first *Hilton* factor, i.e., Respondent's likelihood of success on the merits. (*Id.*) Consistent therewith, the Court finds that this factor weighs in favor of a stay and against release on bond.

Under *Hilton*, however, "even in the face of a 'substantial case on the merits,' a court properly grants bond where the second and fourth *Hilton* factors do not 'militate against release.'" *Pouncy v. Palmer,* 168 F.Supp.3d 954, 967 (E.D. Mich. 2016). *See Hilton*, 481 U.S. at 778 ("[w]here the State . . . can . . . demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing

9

on the merits falls below this level, the preference for release should control.")  As discussed below, that is the case here.

### 2. Irreparable Injury to the State

The second *Hilton* factor considers whether the Respondent (and, by extension, the State of Ohio) will be irreparably injured absent a stay and/or continued detention of the petitioner.  *See Hilton*, 481 U.S. at 776; *Pouncy,* 168 F.Supp.3d at 967.  Among other things, this factor includes a consideration of the State's interest in rehabilitating the petitioner, the risk of flight, and the risk that the petitioner may pose a danger to the public if released.  *See Pouncy*, 168 F.Supp. at 967; *Brannon v. Rapelje*, 2016 WL 1090440 at * 2-3 (E.D. Mich. March 21, 2016); *Ambrose*, 2014 WL 3519221 at * 3.  In addition, courts consider whether denial of a stay would cause irreparable injury by effectively denying the State the opportunity to appeal a district court's judgment granting habeas relief.  *See, e.g., Moore v. Haviland,* 607 F.Supp.2d 867, 869 (N.D. Ohio March 26, 2009).

The Court first considers this factor specifically in the context of Dovala's request to be released on bond.  Respondent argues that the State will be irreparably injured if Dovala is released pending appeal. Respondent notes that Dovala has been convicted of violent felonies, including felony murder and felonious assault.  Citing the ODRC Institutional Summary, Respondent notes that Dovala has had several disciplinary infractions while incarcerated and argues that at least two of these incidents show she has "anger management issues and displaced aggression issues." (April 23, 2021 Hrg. Tr. at p. 12-13.)  In light thereof, Respondent asserts that Dovala poses a danger to the public, most notably, to vulnerable individuals such as the elderly, the disabled, and minors.  (*Id*.)  Lastly, Respondent argues that the State has a continuing interest in rehabilitating Dovala, noting that she has not served her full sentence of life in prison.

Dovala argues that this factor weighs strongly in favor of release. She notes that she has no previous criminal history and is currently assessed by the ODRC as having zero risk of recidivism. (Doc. No. 41 at p. 5.) Dovala disputes Respondent's interpretation of her disciplinary history, arguing that it is "remarkably clean" given the fact that she has been incarcerated for 16 years. (April 23, 2021 Hrg. Tr. at p. 18.) Dovala asserts that she has, in fact, been productive and useful during her incarceration, having participated in several programs designed to help other inmates and to foster her own personal growth and development. (Doc. No. 41 at pp. 5-6.) She insists that she is not a danger to the public, and notes that "restrictions can be put on bond to restrict her to the home so she can help her father." (April 23, 2021 Hrg. Tr. at p. 20.) Finally, Dovala notes that the State's interest in continuing rehabilitation is minimal, particularly in light of the fact that she has already served more than her minimum sentence of 15 years. (Doc. No. 41 at p. 7.)

For the following reasons, the Court finds that the second *Hilton* factor weighs in favor of release on bond, subject to conditions. With regard to the risk of danger to the public, the Court concludes that this risk is low and can be adequately addressed by the imposition of strict release conditions (described in detail *infra*). Aside from the current conviction under review, Dovala has no previous criminal history. (Doc. No. 47 at p. 3.) She has been imprisoned since July 2005 and is currently 49 years old and suffering from Multiple Sclerosis. (*Id*. at pp. 1-3.) The record reflects that Dovala has been assigned a Level 1 (Minimum) Security Classification by the ODRC since July 31, 2015, and her "current risk score" is marked on the ODRC Institutional Report Summary as "low." (Doc. No. 48 at p. 1.) She has no history of substance abuse problems or treatment. (Doc. No. 47.)

While she has had some disciplinary infractions over the course of her sixteen (16) years in prison, they are relatively minor in nature.³ (Doc. No. 48 at pp. 2-3.) None involve violence or threats of violence. Moreover, the Court does not agree with Respondent that two of these infractions are indicative of anger management and/or aggression issues. In one of these incidents, Dovala expressed frustration at having waited in line for an hour at the Arts and Crafts office when the item she wanted was sold out. (*Id*. at p. 2.) In the other, Dovala expressed frustration and refused her meds when she was unable to get her medication early prior to a visit on Family & Friends day. (*Id*. at p. 3.) At no time during either of these instances did Dovala harm anyone or threaten to harm anyone. Rather, it appears that she momentarily lost her patience and verbally expressed her frustration, after which the situations were quickly resolved. The Court does not find that these two isolated incidents, occurring over a span of 16 years of incarceration, demonstrate that Dovala is a risk either to the public at large or to vulnerable populations such as the elderly, the disabled, and/or minors.

With regard to the risk of flight, the Court also finds the risk to be low. The record reflects that Dovala is a lifelong resident of Ohio and has numerous family and friends currently residing in Northeast Ohio. (Doc. No. 47; Doc. No. 41 at p. 8.) She has two children, one of whom resides in Vermilion, Ohio and the other of whom resides in Amherst, Ohio. (Doc. No. 47.) If released, she will reside with her 87-year old father, Randy Heimann, in Lorain, Ohio.⁴ (*Id.*) Also residing at the

---

³ For example, in July 2018, Dovala was cited for attempting to take an extra portion of rice to her cell. (Doc. No. 48 at p. 2.) On April 2018, she came to "first call" without a pass. (*Id*.) In June 2008, she was found with the following "illegal items:" two blue wash cloths, one blue towel, one green t-shirt, one blue sweatshirt, and one pair of blue cut off shorts. (*Id*. at p. 3.)

⁴ The Court notes that, during the April 23, 2021, Dovala and Mr. Heimann both confirmed that they are fully vaccinated against Covid-19. (April 23, 2021 Hrg. Tr. at p. 21-22, 24.) In addition, Mr. Heimann testified that his grandson, who

home is Mr. Heimann's 26-year old grandson, who is present at the residence during the day and assists with grocery shopping, errands, etc. (April 23, 2021 Hrg. Tr. at p. 22.) Mr. Heimann testified at the hearing that he is willing to have Dovala reside with him and his grandson if she is released and, further, that she would be of help to him, particularly in the evenings when his grandson is at work. (*Id.*)

Based on the above, the Court is persuaded that Dovala is not likely to flee if released on bond. All of her family (including her father and her children) reside in this District. She has a strong support system of friends who state that they are willing to provide emotional and financial support. In addition, Dovala asserts (and Respondent does not contest) that, during pretrial proceedings in her underlying criminal case, she remained on bond for thirteen months and was never alleged to have committed any violations of her release. (Doc. No. 41 at pp. 4-5.) Finally, the Court notes that Dovala requires daily treatments for her Multiple Scleroris, which the Court believes lessens the likelihood that she would attempt to flee the District. (Doc. No. 47.) Under these circumstances, the Court finds the risk of flight to be low.

Lastly, the Court considers the State's interest in continuing custody and rehabilitation. As the Supreme Court noted in *Hilton*, the State's interest in this regard "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. Here, Dovala was sentenced to an aggregate prison term of fifteen years to life. (Doc. No. 7-1, Exh. 3.) While she clearly has not served the entirety of her sentence, she has served 16 years, which is more than her minimum sentence. Indeed, Dovala is,

---

also lives in Mr. Heimann's residence, has received his first dose of the Covid-19 vaccine and will be receiving his second dose during the week of April 26, 2021. (*Id.* at p. 25.)

13

in fact, eligible for parole and a parole hearing is currently scheduled for June 2021. Under these circumstances, the Court finds that the State's interest in continuing custody and rehabilitation does not weigh significantly either for or against release.

Based on all of the above, the Court finds that, overall, the second *Hilton* factor weighs in favor of release on bond. Out of an abundance of caution, however, and in recognition of the fact that the state conviction under review involves a violent felony, the Court is imposing strict bond conditions, including home confinement, GPS monitoring, and no unsupervised contact with minors. These conditions are set forth in detail, *infra*, and are mandatory conditions of her release. Upon careful and thoughtful review, the Court finds that these conditions are sufficient to address Respondent's concerns regarding Dovala's release.

The Court next considers the second *Hilton* factor in the context of the State's request for stay of judgment pending appeal. Respondent argues that the State will be irreparably injured if a stay is not granted because the 120-day deadline for retrying Dovala in state court might effectively render Respondent's pending appeal to the Sixth Circuit moot. Dovala does not oppose a stay.

In the December 30, 2020 Order, the Court was persuaded by Respondent's concerns regarding potential mootness absent a stay. (Doc. No. 44 at p. 13.) At that time, the 120-day new trial deadline was due to expire in less than two months (i.e., by February 16, 2021) and the parties had not yet filed their appellate briefs in the Sixth Circuit. Currently, however, the Sixth Circuit docket reflects that briefing is complete and the matter is scheduled for oral argument on June 10, 2021, less than six weeks from now.

Given this change in circumstance, and in light of the fact that the new information before the Court leads it to find that the second *Hilton* factor weighs in favor of release, the Court hereby vacates

the December 30, 2020 Order to the extent it grants Respondent's request for stay of judgment pending appeal. Respondent's appeal is fully briefed and proceeding expeditiously before the Sixth Circuit. Further, as noted during the hearing, Respondent may, if it so chooses, immediately appeal this decision and seek relief directly from the Sixth Circuit. Finally, as discussed *supra*, in order to ameliorate any potential prejudice to the Respondent, the Court will deem the 120-day new trial deadline tolled in light of the filing of the Respondent's Motion to Stay. The 120-day deadline set forth in this Court's October 19, 2020 Memorandum Opinion & Order and Judgment Entry will, therefore, begin to run as of the date of this Order and expire on August 27, 2021. In light of the above, the Court finds that Respondent has not demonstrated that the second *Hilton* factor weighs in favor of a stay.

Accordingly, and for all the reasons set forth above, the Court finds that the second *Hilton* factor weighs in favor of release on bond (subject to conditions) and against a stay pending appeal.

### 3. Irreparable injury to Other Interested Parties

The third *Hilton* factor considers "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Hilton,* 481 U.S. at 776. When evaluating this factor, courts typically consider whether the habeas petitioner will be irreparably injured by a stay and/or by continued confinement. *See, e.g., Pouncy*, 168 F.Supp.3d at 969; *Brannon,* 2016 WL 10090440 at * 3. In the instant case, the Court also heard statements from the victim's representatives (Ms. Callahan-Smath, Gerald Smath, and Jaedon Smath), who are also unquestionably "interested parties." Thus, the Court will consider this factor with regard to the potential for irreparable injury to both Dovala and to the family of Riley Smath.

Courts within the Sixth Circuit have held that continued imprisonment in violation of the United States Constitution constitutes irreparable harm. *See Newman*, 300 Fed. Appx. at 344 (finding that "[the petitioner] suffered a continuing injury while incarcerated"); *Pouncy*, 168 F.Supp.3d at 969 (same); *Miller,* 641 F.Supp.2d at 669 (same). See also *Brannon*, 2016 WL 1090440 at * 3 ("Continued imprisonment from a constitutionally infirm conviction would cause substantial injury to Petitioner."); *Leatherman v. Palmer*, 2008 WL 5062902 at *4 (W.D. Mich. Nov. 26, 2008) ("It is nearly impossible to compensate for time lost in prison."); *Cristini v. McKee,* 2006 WL 2432093 at *3, (E.D. Mich. Aug. 21, 2006) ("A petitioner suffers irreparable harm each day the petitioner remains imprisoned in violation of the United States Constitution."); *Taylor v. Withrow*, 2001 WL 902497 at *3 (E.D. Mich. Aug. 2, 2001) (same). Here, the Court has determined that Dovala was not provided effective assistance of counsel during her trial and that her continued imprisonment, therefore, violates the United States Constitution. Under these circumstances, and in light of the above authority, the Court finds that Dovala's continued detention constitutes irreparable harm.

The Court recognizes that the family of Riley Smath strongly opposes release on bond. During the April 23, 2021 hearing, Ms. Callahan-Smath, Mr. Smath, and Jaedon Smath explained how painful this case has been for them and expressed a concern that Dovala presents a danger to children and to the community at large. (April 23, 2021 Hrg. Tr. at pp. 5-8.)

The Court is acutely aware of the suffering endured by Riley Smath's family and friends and has given great consideration to the concerns expressed by the Smath family during the hearing. After careful reflection, and given the wealth of authority finding that continued detention in violation of the Constitution constitutes irreparable harm, the Court must find that the third *Hilton* factor weighs in favor of release on bond. However, the Court is imposing strict bond conditions to address the

16

concerns expressed by the Smath family during the hearing. Specifically, as noted above, the Court is imposing the condition that Dovala be subject to home confinement and GPS monitoring. She is forbidden from any contact whatsoever with the Smath family. In addition, Dovala is not permitted to have any unsupervised contact with minors, as set forth in the Order Setting Conditions of Release filed separately on this date. Finally, Dovala is required to submit to supervision by the U.S. Pretrial Supervision Office and, further, to undergo a psychiatric/mental health evaluation and/or counseling as directed by that Office. The Court sincerely believes that these conditions should help alleviate the safety concerns expressed by the Smath family.

Accordingly, and for all the reasons set forth above, the Court finds that the third *Hilton* factor weighs in favor of release on bond (subject to conditions) and against a stay pending appeal.

### 4. Public interest

The fourth, and final, *Hilton* factor considers "where the public interest lies." *Hilton*, 481 U.S. at 776. Respondent argues that this factor weighs against release because Dovala was convicted of a violent felony, has demonstrated "anger management issues" while incarcerated, and has served a relatively small portion of her life sentence. (Doc. No. 42 at p. 9-10.) Dovala argues that she is not a danger to the community and has served her minimum sentence. (Doc. No. 41 at p. 9.) She further asserts that the public has an interest in not continuing to incarcerate individuals who have been denied their constitutional right to effective assistance of counsel. (*Id*.)

The Court has already addressed, at some length, the parties' arguments regarding the potential for danger to the public and the risk of flight. For all of the reasons set forth in connection with the second *Hilton* factor, the Court finds that the risk of danger to the public posed by Dovala's release is low, particularly in light of the strict bond conditions imposed herein. In addition, the Court

agrees with Dovala that "the public has a compelling interest in the State not continuing to incarcerate individuals who have not been accorded their constitutional right to a fair trial." *See Pouncy*, 168 F.Supp.3d at 969; *Miller,* 641 F.Supp.2d at 670.

Accordingly, the Court finds that the public interest factor weights in favor of release on bond (subject to conditions) and against a stay.

## IV.      Strict Conditions of Release

For all of the reasons explained above, the Court concludes that, while Respondent may have a "substantial case on the merits," the second, third, and fourth *Hilton* factors do not "militate against release." *Hilton*, 481 U.S. at 777-78.  Accordingly, the Court concludes that the presumption of release has not been rebutted and that Dovala should be released from custody pending appeal.

However, the Court also believes that imposing strict conditions of release is appropriate to strike the proper balance between the interests of Dovala, Respondent, and the public, including the Smath family.  Accordingly, Dovala must comply with all of the conditions set forth herein and in the Order Setting Conditions of Release and Appearance Bond issued separately, including but not limited to the following:

1.      Dovala must submit to supervision by the U.S. Pretrial Services and Probation Office and report for supervision as directed.

2.      Dovala shall reside with her father, Randy Heimann, in Lorain, Ohio at the address listed in the Pretrial Services Report.

3.      Dovala shall be subject to home incarceration. She is restricted to the above residence at all times except for medical needs or treatment, attorney visits, and court appearances pre-approved by the pretrial services.

4. Dovala shall submit to location monitoring as directed by the pretrial services or supervising officer, including Radio Frequency, Passive GPS Monitoring, and/or Active GPS Monitoring. Dovala shall pay all or part of the cost of location monitoring based upon her ability to pay as determined by the pretrial services or supervising officer.

5. Dovala shall not have any contact, directly or indirectly, with any member of the Smath family. Dovala shall not in any way encourage or condone any other person to have such contact.

6. Dovala shall not have any contact, directly or indirectly, with any person who testified against her at her criminal trial or any person who may reasonably be expected to testify against her at a re-trial. Dovala shall not in any way encourage or condone any other person to have such contact. Nothing in this order shall prohibit Dovala's attorney (or an investigator employed by Dovala's attorney) from attempting to contact potential witnesses.

7. Dovala shall not associate or have verbal, written, telephone, or electronic communication with any person under the age of 18 except in the presence of the parent or legal guardian of said minor. Dovala may, however, have unsupervised contact with her daughter, if her daughter so chooses.

8. Dovala shall not seek, obtain or maintain any employment, volunteer work, church or recreational activities involving minors (persons under the age of 18) in any way without the prior express written approval of the U.S. Pretrial Services and Probation Office.

9. Dovala shall undergo a psychiatric/mental health evaluation and/or counseling as directed by Pretrial Services. In addition, she shall take all medications as prescribed.

10. Dovala must report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

11. Dovala must execute an unsecured bond binding her to pay to the United States the sum of $100, 000 in the event of a failure to appear as required or surrender to serve any sentence imposed.

**V.     Conclusion**

Accordingly, and for all the reasons set forth above, the Court finds that Petitioner's Motion for Bond (Doc. No. 41) is GRANTED subject to the conditions set forth herein and in the Order Setting Conditions of Release and Appearance Bond issued separately.  In addition, the Court's previous Order (Doc. No. 44) granting Respondent's Motion to Stay New Trial pending Appeal is VACATED IN PART as set forth herein.  Unless a new trial is scheduled within 120 days of the date of this Order, Petitioner must be unconditionally released.

Dovala is ordered released to the custody of the U.S. Marshal's Service or their designee.  The Marshal's Service or their designee shall transport Dovala to the Carl B. Stokes Courthouse, 801 West Superior Avenue, Cleveland, Ohio 44113.  At that time, Dovala shall be transferred to the custody of Pretrial Services and shall submit to location monitoring.

**IT IS SO ORDERED.**

Date:  April 29, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE